In re the Commitment of Christopher L. Combs:
State of Wisconsin, Petitioner-Respondent,

v.

Christopher L. Combs, Respondent-Appellant.†

Court of Appeals

*No. 2005AP859. Submitted on briefs October 11, 2005.
—Decided June 29, 2006.*

2006 WI App 137

(Also reported in 720 N.W.2d 684.)

† Petition to review denied 9/11/06.

457

458

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, asst. public defender, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Vergeront, Higginbotham, JJ.

¶ 1. VERGERONT, J.   Christopher L. Combs, previously committed as a sexually violent person under Wis. Stat. ch. 980, appeals an order denying his petition for discharge. The circuit court held a probable cause hearing pursuant to Wis. Stat. § 980.09(2)(a)[1] and determined that the re-examination report opining that Combs was not a sexually violent person did not show

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

probable cause to believe that he was no longer a sexually violent person. We agree with the circuit court that the opinion did not establish probable cause because it was based on historical facts, actuarial instruments, and theories of interpreting those instruments that were considered by the experts testifying at the commitment trial. The opinion did not depend upon any fact or professional knowledge or research that was not considered by the experts testifying at the commitment trial. We therefore conclude the report was not sufficient to establish probable cause that Combs no longer was a sexually violent person.[2] *See* § 980.09(2). Accordingly, the circuit court properly denied Combs' discharge petition without an evidentiary hearing, and we affirm.

## BACKGROUND

### I. Commitment Trial

¶ 2. In 1992, Combs was convicted of having sexual intercourse by use of force or violence as a repeat offender in violation of Wis. Stat. §§ 940.225(2)(a) (1991) and 939.62(1)(b) (1991); he was sentenced to thirteen years imprisonment. Shortly before Combs was to be released in April 2000, the State petitioned the court to commit him as a sexually violent person under Wis. Stat. ch. 980. A sexually violent person under Wis. Stat. § 980.01(7) (1997–98), the version of the statute on which the State relied in the petition, is:[3]

---

[2] We certified this issue in *State v. Combs*, 2005 WL 3434976 (WI App Dec. 15, 2005) (No. 2005AP859). Certification was denied 2006 WI 23 (WI Feb. 28, 2006).

[3] 2003 Wis. Act 187, § 2 changed the definition to a person whose mental disorder makes it "likely," rather than whose

a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

¶ 3. At the May 2001 jury trial on the petition, three psychologists—Dr. Christopher Tyre, Dr. Patricia Coffey, and Dr. Caton Roberts—gave their opinions on whether it was substantially probable, or much more likely than not, that Combs would commit future acts of sexual violence if released.[4] All three opined that Combs had a mental disorder within the meaning of WIS. STAT. § 980.01(2) (1997–98).[5] As relevant to this appeal, each diagnosed Combs with anti-social personality disorder (ASPD), and Dr. Tyre, in addition, diagnosed Combs as having paraphilia not otherwise specified.[6] Dr. Tyre opined that, to a reasonable degree of professional

---

mental disorder "makes it substantially probable" that the person will engage in acts of sexual violence. *See* WIS. STAT. § 980.01(7) (2003–04).

[4] The term "substantial probability" in WIS. STAT. § 980.02(2)(c) (1997–98) was defined in *State v. Curiel*, 227 Wis. 2d 389, 406, 597 N.W.2d 697 (1999), to mean "much more likely than not."

Other witnesses testified at the trial, but for this appeal it is necessary to summarize the testimony of only these three.

[5] WISCONSIN STAT. § 980.01(2) (1997–98) provides:

"Mental disorder" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence.

This is the same definition found in § 980.01(2) (2003–04).

[6] Dr. Tyre defined paraphilia not otherwise specified as recurring "intense sexual fantasies, urges or behaviors" which occur over more than six months and cause "significant clinical impairment in a person's life."

certainty, it was substantially probable that Combs would engage in acts of sexual violence; both Dr. Coffey and Dr. Roberts opined that they could not conclude to the requisite degree of certainty that it was much more likely than not that Combs would engage in acts of sexual violence.

¶ 4. In evaluating the likelihood of Combs engaging in future acts of sexual violence, all three experts used actuarial instruments. These are statistical research-based instruments that are created using data obtained by studying various factors associated with recidivism in groups of people who were convicted for sexual offenses, released, and followed over time. All three experts used: the Rapid Risk Assessment for Sex Offender Recidivism (RRASOR), a four-item scale that considers prior sex offenses, current age, victim gender, and relationship to victim; the Static-99, which considers those factors as well as a broader category of criminal offenses and whether the individual is "single" as defined in the instrument; and the Minnesota Sex Offender Screening Tool Revised (MnSOST-R), which considers prior sex offenses and other factors based on the individual's life before the current offense as well as factors based on events occurring during institutionalization.[7]

---

Each of these three trial experts, as well as the two re-examining experts, diagnosed Combs with substance abuse, but that diagnosis is not relevant to the opinions whether he is a sexually violent person under WIS. STAT. ch. 980.

[7] In addition, Dr. Tyre used the unrevised version, the MnSOST. All three experts testified that they were aware that the MnSOST and the MnSOST-R were based on a small sample group, and Dr. Coffey and Dr. Roberts were aware that there were questions about the cross-validation of this instrument. Neither the MnSOST nor the MNSOST-R was used by either of

¶ 5. Dr. Tyre scored Combs as a four on the RRASOR and a "six slash seven slash eight" on the Static-99, depending on how he calculated certain events, while both Dr. Coffey and Dr. Roberts scored Combs as a three on the RRASOR and a five on the Static-99. The scores on these instruments are associated with a particular percentage of persons who are reconvicted of a sexually violent offense within a particular number of years, and each expert explained what those were, given the scores of each. The higher the score, the greater the risk.

¶ 6. The trial testimony explored some of the differences in the methods of scoring that led to the difference in scores. One of the differences was that Dr. Tyre counted as "convictions" incidents that resulted in sanctions or consequences but not in convictions or adjudications, while Dr. Coffey and Dr. Roberts disagreed with this practice. Based on their understanding of how these instruments had been validated, these two experts counted only incidents that resulted in convictions and adjudications.[8]

¶ 7. In addition to their scores on the actuarial instruments, all three experts considered other events and other behavior of Combs in evaluating the risk that he would engage in acts of sexual violence. Furthermore, each considered their diagnoses of Combs in evaluating that risk. For example, Dr. Tyre testified that risk assessment research shows that people who

the re-examination experts. Because Combs does not argue that it is significant that this instrument was not used in his re-examination, we do not further discuss it.

[8] Both the RRASOR and the Static-99 consider "charges" and "convictions" for prior sex offenses. We discuss in paragraph 6 only the testimony on how the witnesses interpreted "convictions."

have a combination of paraphilia and ASPD are the highest risk individual. In contrast, Dr. Coffey, besides disagreeing that Combs had paraphilia, did not agree that the combination of paraphilia and ASPD, by itself, meant a high risk. In her view, the degree of psychopathy, as measured by the Hare Psychopathy Checklist (PCL-R), was a critical factor, and she concluded Combs did not have a high degree of psychopathy according to this instrument.

¶ 8.   Based on the testimony of these experts and the other evidence, the jury found Combs was a sexually violent person and the circuit court committed Combs to the custody of Department of Health and Family Services (DHFS).

II. 2004 Re-Examination

¶ 9.   In April 2004, Dr. James Harasymiw examined Combs as part of a periodic re-examination required by WISCONSIN STAT. § 980.07(1)[9] and prepared a report. Like the three trial experts, Dr. Harasymiw diagnosed Combs as having ASPD and concluded this was a mental disorder under WIS. STAT. ch 980 that predisposed Combs to engage in acts of sexual violence. Like Dr. Coffey and Dr. Roberts, he did not give Combs a diagnosis of paraphilia.

---

[9] WISCONSIN STAT. § 980.07(1) provides:

(1) If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged. At the time of a reexamination under this section, the person who has been committed may retain or seek to have the court appoint an examiner as provided under s. 980.03 (4).

¶ 10. Next, Dr. Harasymiw calculated Combs' score on the RRASOR as a three, calculated his score on the Static-99 as a six, and found Combs had a high degree of psychopathy as measured by the PCL-R. Dr. Harasymiw concluded Combs had a high risk for recidivism based on his having a combination of a high degree of psychopathy, a high-risk score on the Static-99, and an ASPD diagnosis. Based on his diagnosis and the scores on the actuarial instruments, which Dr. Harasymiw described as "historically-based," he concluded "to a reasonable degree of professional certainty that Mr. Combs still meets criteria for commitment under Chapter 980."

¶ 11. Dr. Harasymiw then assessed Combs with regard to certain "dynamic" characteristics: (1) illegal sexual interests and/or sexual pre-occupation; (2) attitudes that justify offending; (3) social/emotional functioning; and, (4) self-management. While Dr. Harasymiw concluded that Combs had made progress in three of these categories, that progress did not alter Dr. Harasymiw's opinion based on the "historically-based" considerations. Dr. Harasymiw concluded that Combs "still represent[ed a] substantial probability to commit another sexually violent offense," and had "not made sufficient progress for the court to consider supervised release or discharge."

¶ 12. Combs did not affirmatively waive his right to petition for discharge under Wis. Stat. § 980.09(2)(a)[10]

---

[10] WISCONSIN STAT. § 980.09(2) provides:

(2) PETITION WITHOUT SECRETARY'S APPROVAL. (a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07 (1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall

and he exercised his right to request that the circuit court appoint a qualified professional to examine him. *See* WIS. STAT. §§ 980.07(1) and 980.03(4). The circuit court appointed Dr. Sheila Fields. Dr. Fields filed a report in August 2004 in which she concluded that she "[did] not believe to a reasonable degree of psychological certainty that Mr. Combs is more likely than not to commit additional sexually violent acts if discharged," and "the preponderance of data . . . suggest that Mr. Combs' sexually violent recidivism risks most likely do

contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

(b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue. At a hearing under this paragraph, the committed person is entitled to be present and to the benefit of the protections afforded to the person under s. 980.03. The district attorney or the department of justice, whichever filed the original petition, shall represent the state at a hearing under this paragraph. The hearing under this paragraph shall be to the court. The state has the right to have the committed person evaluated by experts chosen by the state. At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criteria specified in s. 980.08 (4) (b), whether to modify the person's existing commitment order by authorizing supervised release.

not reach threshold levels necessary for commitment under Chapter 980 criteria."

¶ 13.   In arriving at her conclusion, Dr. Fields, like Dr. Harasymiw, reviewed Combs' DOC files, including previous WIS. STAT. ch. 980 examinations, and interviewed Combs. Like Dr. Harasymiw, Dr. Coffey, and Dr. Roberts, Dr. Fields diagnosed Combs as having ASPD but not paraphilia. Like Dr. Coffey, and unlike Dr. Harasymiw, the score she gave Combs on the PCL-R did not, in her opinion, magnify risks beyond those already associated with ASPD.

¶ 14.   Dr. Fields scored Combs as a two on the RRASOR and a four on the Static-99. She explained that, while "some other [WIS. STAT. ch. 980] evaluators" had included Combs' juvenile sexual misconduct, she did not do so because there were no adjudications. She acknowledged that he did receive significant punishments for those incidents, but she did not view the punishments as the equivalent of adjudications. She noted that "the norms for these actuarial scales were developed on samples in which similar criminal conduct (i.e., that which was not adjudicated) is not scored as such."

¶ 15.   Dr. Fields then considered the "dynamic" characteristics affecting Combs' recidivism risk, using the same categories as did Dr. Harasymiw except that she used an additional category of age/health.[11] In considering these categories, Dr. Fields, as did Dr. Harasymiw, took into account information existing at the time of the commitment trial in May 2001, as well as information coming into existence since that time.

---

[11] Like Dr. Harasymiw, Dr. Fields noted there was no consensus on "how to quantify [these dynamic characteristics] into risk estimates."

¶ 16.   Dr. Fields concluded:

> I do not believe to a reasonable degree of psychological certainty that Mr. Combs is more likely than not to commit additional sexually violent acts if discharged. While dynamic risk factors, treatment progress, and supervision considerations probably do not significantly decrease Mr. Combs offending risks, neither do they increase risks very substantially. As such, the statistical risks as estimated by actuarial scales are probably reasonably reliable and valid, and the preponderance of data, then, suggest that Mr. Combs' sexually violent recidivism risks most likely do not reach threshold levels necessary for commitment under Chapter 980 criteria.

¶ 17.   Because Combs did not affirmatively waive his right to petition for discharge, the court, as required by Wis. Stat. § 980.09(2)(a), scheduled a probable cause hearing to determine "whether facts exist that warrant a hearing on whether [Combs] is still a sexually violent person." The court concluded that Dr. Fields' report did not establish probable cause to believe that Combs was no longer a sexually violent person. Therefore, the court dismissed the petition. The court stated that Dr. Fields' conclusion was based on a different interpretation applied to the same actuarial instruments that were used by the three experts who testified at the commitment trial, and her interpretation resulted in different scores on those instruments. These differing interpretations of the actuarial instruments, the court stated, had been disputed at the commitment trial and resolved by the jury.

## ANALYSIS

¶ 18.   Combs contends on appeal that Dr. Fields' report establishes probable cause to believe that he is

not still a sexually violent person and the circuit court erred in deciding it did not.[12] Combs acknowledges that Dr. Fields based her opinion on the same actuarial instruments that were used by the experts who testified at the commitment trial, but, he asserts, she interpreted and scored them differently than did those experts. According to Combs, the phrases "still a sexually violent person" in WIS. STAT. § 980.09(2)(a) and "no longer a sexually violent person" in § 980.09(2)(b) encompass a person who is not now sexually violent because of a different interpretation and scoring of the same actuarial instruments used by experts at the commitment trial.

¶ 19. The State's position is that the statutory language means that there must be an improvement either in the petitioner's mental condition or degree of dangerousness, and, it asserts, Dr. Fields' report shows

___

[12] Combs also contends that the circuit court at the probable cause hearing is to determine only whether there is a believable and plausible account that establishes that he is not still a sexually violent person; and, since in his view, Dr. Fields' report meets that standard, the court is not to weigh other reports or other evidence. Combs relies on *State v. Fowler*, 2005 WI App 41, ¶ 11, 279 Wis. 2d 459, 694 N.W.2d 446, for this argument. The State's position on this issue is that under *State v. Thayer*, 2001 WI App 51, ¶ 28, 241 Wis. 2d 417, 626 N.W.2d 811, the circuit court may weigh the evidence presented at the probable cause hearing. It is unnecessary for us to decide this issue on this appeal because the circuit court here did not weigh Dr. Fields' report against Dr. Harasymiw's report or against the contrary evidence and opinions presented at the initial commitment trial. Rather, the court considered only Dr. Fields' report, but concluded it did not show probable cause to believe that Combs was not still a sexually violent person because her opinion was based on a method of scoring on the actuarial instruments that had already been litigated.

neither. In the State's view, Combs has already been adjudged a sexually violent person and the legislature did not intend WIS. STAT. § 980.09(2) to permit relitigation of that determination.

¶ 20.  Combs replies that he is not relitigating whether he was a sexually violent person in 2001, because Dr. Fields' report offers no opinion on that, only on whether he was a sexually violent person in August 2004. As to this opinion, Combs asserts, there has been no previous litigation.

■

¶ 21.  Whether Dr. Fields' report is sufficient to establish probable cause to believe that Combs is not "still . . . sexually violent" or is "no longer . . . sexually violent" requires a construction of WIS. STAT. § 980.09(2).[13] This presents a question of law, which we review de novo. *State v. Pocan*, 2003 WI App 233, ¶ 5, 267 Wis. 2d 953, 671 N.W.2d 860.

■

¶ 22.  When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the

---

[13] WISCONSIN STAT. § 980.09(2)(a) states the probable cause hearing is to determine whether the petitioner is "still a sexually violent person"; under subsec. (2)(b) there is an evidentiary hearing if the court determines there is probable cause to believe the petitioner is "no longer . . . sexually violent." We view the two phrases as presenting the same issue for statutory construction in this case:   that is, "not 'still a sexually violent person'" means the same as "no longer a sexually violent person."

context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. We do so in part because words often have multiple meanings and the applicable definition depends upon the context in which a word is used. *See id.*, ¶¶ 48–49. If this process of analysis yields a plain meaning, there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46. However, if the statutory language is capable of being understood by reasonably well-informed persons in two or more senses, it is ambiguous and we may employ sources extrinsic to the statutory text. *Id.*, ¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50.

¶ 23.   We recently discussed the meaning of "still sexually violent" in Wis. Stat. § 980.09(2)(a) in *Pocan*, 267 Wis. 2d 953. There a re-examination report, using actuarial tables that had not been available at the commitment hearing, concluded that Pocan's "mental disorders [did] not pre-dispose [him] to engage in acts of sexual violence . . . ." *Id.*, ¶ 4. Due to a mistaken view of the record, the circuit court dismissed Pocan's petition for discharge without affording him a probable cause hearing under § 980.09(2)(a). *Id.*, ¶ 8.[14] The State conceded that Pocan was entitled to a probable cause hearing, but contended that the error did not require

---

[14] The circuit court in *State v. Pocan*, 2003 WI App 233, ¶ 8, 267 Wis. 2d 953, 671 N.W.2d 860, mistakenly believed that Pocan had previously filed a petition for discharge that had been determined frivolous, and the circuit court applied Wis. Stat. § 980.10, which provides:

reversal because the re-examination report did not provide any evidence that Pocan's condition had im-

> **Additional discharge petitions**. In addition to the procedures under s. 980.09, a committed person may petition the committing court for discharge at any time, but if a person has previously filed a petition for discharge without the secretary's approval and the court determined, either upon review of the petition or following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted. If the court finds that a hearing is warranted, the court shall set a probable cause hearing in accordance with s. 980.09 (2) (a) and continue proceedings under s. 980.09 (2) (b), if appropriate. If the person has not previously filed a petition for discharge without the secretary's approval, the court shall set a probable cause hearing in accordance with s. 980.09 (2) (a) and continue proceedings under s. 980.09 (2) (b), if appropriate.

The circuit court determined that Pocan's petition, based on the re-examination report, did not show that his condition had changed. *Pocan*, 267 Wis. 2d 953, ¶ 8. In the context of discussing why the circuit court erred in not conducting a probable cause hearing, we stated that the court must set a probable cause hearing under WIS. STAT. § 980.09(2)(a) "[w]hen an individual petitions for the first time without the secretary's approval," but that "[i]f the individual files any subsequent petitions, the [circuit] court proceeds under WIS. STAT. § 980.10 . . . ." *Id.*, ¶¶ 6–7.

This construction appears to conflict with the supreme court's construction of WIS. STAT. §§ 980.09(2) and 980.10 in *State v. Post*, 197 Wis. 2d 279, 327, 541 N.W.2d 115 (1995). There the court held that the procedure in § 980.10—denial without a hearing unless the petition contains facts indicating the person's condition has so changed that a hearing is warranted—

> is clearly limited to "subsequent petition[s] *under this section*." WIS. STAT. § 980.10 (emphasis added). In other words, this limitation does not apply to petitions for supervised release, petitions for discharge filed with the secretary's approval, or those filed without

proved; rather, the State argued, Pocan was asserting he never was a sexually violent person. *Id.*, ¶¶ 9–11. In the State's view, this did not show that he was not "still" a sexually violent person. *Id.* We rejected this argument, stating:

> We agree that progress in treatment is one way of showing that a person is not still a sexually violent person. However, we conclude that is not the only way. A new *diagnosis* would be another way of proving someone is not still a sexually violent person. A new diagnosis need not attack the original finding that an individual was a sexually violent person. Rather, a new diagnosis focuses on the present. The present diagnosis would be evidence of whether an individual is still a sexually violent person.
>
> The circuit court found Pocan to be a sexually violent person when it committed him in 1998. He now argues new diagnostic tools show that he is not a sexually violent person. If the court finds Pocan is not sexually violent now, that means he is not still a sexually violent person.

*Id.*, ¶¶ 12–13 (emphasis added).

¶ 24.  Combs argues that *Pocan* supports his position. He asserts that, because the focus of the statute is on whether the petitioner is *presently* a sexually violent person, it does not matter whether that is so because

approval following the yearly examination. Nor does this section in any way affect a committed person's right to an annual hearing for discharge under § 980.09(2).

*Id.* at 327.

It is unnecessary to address this apparent conflict between *Pocan* and *Post* on this appeal, except insofar as it is relevant to part of Combs' argument on the proper construction of Wis. Stat. § 980.09(2), which we address in paragraphs 30 and 31.

the petitioner's condition has changed or because he never was sexually violent. Combs also asserts that we did not hold in *Pocan* that progress in treatment and a new diagnosis were the *only* two methods of showing that a person was not still sexually violent. He points out that what was "new" in *Pocan* was not actually Pocan's diagnosis but new actuarial instruments and, he asserts, there is no basis for distinguishing between the use of new actuarial instruments and a new interpretation of instruments previously applied to him, which, in his view, is what is "new" about Dr. Fields' report.

¶ 25.   Combs is correct that, despite language suggesting otherwise, in *Pocan* there was not a new diagnosis in the sense of a new diagnosis of Pocan's mental disorder. Rather, there was a new actuarial instrument to evaluate Pocan's dangerousness, that is, the likelihood that his mental disorder would predispose him to engage in acts of sexual violence. However, the significant point of our holding in *Pocan* is that probable cause to believe a person is "no longer . . . sexually violent" may be established by a method professionals use to evaluate whether a person is sexually violent that was not available at the time of the prior examination, as well as by a change in the person himself or herself.[15] The methods professionals use to evaluate whether a person is sexually violent include both methods to determine whether a person has a mental disorder

---

[15] We point out that although progress in treatment is one way that a person could change, that is not the only way:   For example, a physical illness that developed after a commitment could mean that there is not a substantial probability that the person would engage in acts of sexual violence, even though the person's mental disorder had not changed and even though there had been no progress in treatment.

474

within the meaning of Wis. Stat. § 980.01(2) and methods to determine the likelihood of engaging in acts of sexual violence as provided in § 980.01(7).

¶ 26. Although *Pocan* is the starting point for our analysis, we conclude it does not resolve the issue presented on this appeal. In the case before us there is no contention that Dr. Fields' opinion is based on a change in Combs himself. Dr. Fields did consider his progress in treatment and his attitudes and behavior since the commitment trial; but her report explicitly states that these are not the basis for her conclusion that he is not a sexually violent person. Nor is there any contention that Dr. Fields used a method of evaluating whether Combs was a sexually violent person that was not available at the time of the commitment trial.

¶ 27. Combs asserts that, while Dr. Fields used the actuarial instruments that were used by the experts at the trial—the RRASOR and the Static-99—her interpretation is "new." However, her interpretation is not "new" in the sense of being based on research or professional writings on how to interpret or score these instruments that were not available at the time of the commitment trial. Combs does not point to anything in Dr. Fields' report that indicates this, and we have identified nothing. Rather, her interpretation is "new" only in the sense that she is not one of the experts who has previously evaluated Combs using these instruments and, thus, her interpretation and scoring—reflecting her individual professional judgment—has not occurred before. The precise issue presented by these facts is whether an expert's conclusion that a person is not sexually violent, based on actuarial instruments that were used previously by other experts to evaluate the petitioner, when there is no change in the historical facts to which those instruments are applied

and no change in the research or writings on how professionals are to interpret and score those instruments, establishes probable cause that a person is no longer sexually violent. *Pocan* did not address this issue, and we turn to it now.

¶ 28.  In resolving this issue, it is important to take into account the purpose of Wis. Stat. § 980.09(2). The required periodic re-examination and "probable cause hearing for discharge . . . unless the committed person affirmatively waives this right" are among the protections that the supreme court has considered significant in concluding that Wis. Stat. ch. 980 does not violate the equal protection clause or the right to due process. *State v. Post,* 197 Wis. 2d 279, 307 n.14, 313–16, 325–27, 541 N.W.2d 115 (1995). For this reason, we do not agree with the State's argument that § 980.09(2) is not intended to be used to correct an initial determination of sexual violence and that the committed person must use habeas corpus procedure for that purpose. Whether or not other procedures exist, the legislature has enacted a statutory procedure in § 980.09(2) that provides for a periodic probable cause hearing unless the committed person affirmatively waives it, *Post,* 197 Wis. 2d at 326–27; and we have held in *Pocan* that probable cause to believe a committed person is no longer sexually violent includes a method of evaluating dangerousness that was not available at the time of the initial determination. *Pocan,* 267 Wis. 2d 953, ¶¶ 4, 12–14. Our holding in *Pocan* is consistent with the significance of probable cause hearings under Wis. Stat. § 980.02(a) in protecting against continued commitment of a person who is not sexually violent.

¶ 29.  On the other hand, the expansive reading that Combs would give to the scope of a probable cause

476

hearing would mean that, any time an expert examining a person already committed comes to the conclusion that the person is not sexually violent, even if the basis for this opinion was already considered by another expert who testified at the commitment trial, there must be an evidentiary hearing. Combs asserts that this construction of the statute is justified because it is a way to "correct mistakes" in committing people as sexually violent persons. However, this assertion assumes that an expert's opinion that a person is not sexually violent, and was not sexually violent when committed, necessarily means that the original fact-finder's determination of sexual violence was an error. This assumption overlooks the reality that often, as in this case, there are conflicting expert opinions on whether a person is sexually violent, both at the time of the commitment hearing and at re-examination; the fact-finder may find one expert opinion more persuasive than another,[16] but that does not necessarily make opinions to the contrary "wrong." Similarly, an expert opinion that conflicts with the initial determination does not necessarily mean the initial determination was "wrong."

¶ 30. Combs argues that the different language in Wis. Stat. § 980.10 supports his construction of Wis. Stat. § 980.09(2). Section 980.10 provides:

> **Additional discharge petitions.** In addition to the procedures under s. 980.09, a committed person may petition the committing court for discharge at any time, but if a person has previously filed a petition for discharge without the secretary's approval and the court determined, either upon review of the petition or

---

[16] The fact-finder in a Wis. Stat. ch. 980 trial may accept or reject all or any portion of any expert's opinion and may consider all non-expert testimony. *State v. Kienitz*, 227 Wis. 2d 423, 440–41, 597 N.W.2d 712 (1999).

following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this section without a hearing *unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted.* If the court finds that a hearing is warranted, the court shall set a probable cause hearing in accordance with s. 980.09 (2) (a) and continue proceedings under s. 980.09 (2) (b), if appropriate. If the person has not previously filed a petition for discharge without the secretary's approval, the court shall set a probable cause hearing in accordance with s. 980.09 (2) (a) and continue proceedings under s. 980.09 (2) (b), if appropriate.

(Emphasis added.)

¶ 31.    Combs asserts that the italicized language is intended to make it more difficult to have a hearing on a petition after one has previously been dismissed, and we therefore must construe the standard for obtaining an evidentiary hearing under WIS. STAT. § 980.09(2) more broadly. This argument implies that WIS. STAT. § 980.10 applies to petitions filed under § 980.09(2) after the first petition. However, that construction appears to conflict with the supreme court's construction of §§ 980.09(2) and 980.10 in *Post*, 197 Wis. 2d at 327. *See also id.* at 307 n.14. In any event, accepting that the language in § 980.10 is intended to establish a narrower standard than § 980.09(2), that language does not help to define the scope of the broader standard under § 980.09(2).

■

¶ 32.    We conclude the legislature did not intend that probable cause under WIS. STAT. § 980.09(2) may be established by an expert's opinion that a person is not sexually violent without regard to whether that opinion

478

is based on matters that were already considered by experts testifying at the commitment trial or a prior evidentiary hearing. Rather, we conclude that the legislature intended that, in order to provide a basis for probable cause to believe a person is no longer sexually violent under § 980.09(2), an expert's opinion must depend upon something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent.[17] By way of example, an opinion that a person is not sexually violent based at least in part on facts about the committed person that did not occur until after the prior adjudication would meet this standard, as would an opinion based at least in part on new professional knowledge about how to predict dangerousness. These examples are not exhaustive.

¶ 33.  We recognize this standard does not offer a simple, bright line. However, we are persuaded that this interpretation of WIS. STAT. § 980.09(2) is the most reasonable because it serves the purpose of ensuring that a person who is not sexually violent does not continue in commitment, while avoiding continual relitigation of issues.

¶ 34.  Applying this construction of WIS. STAT. § 980.09(2), we conclude that Dr. Fields' opinion did not

_____

[17] We need not address what the result would be if Dr. Fields' opinion depended on facts or professional knowledge or research in existence at the time Combs was previously determined to be sexually violent, but which were not considered by an expert testifying at that time. Whether the legislature intended WIS. STAT. § 980.02 as a vehicle to litigate issues that could have been, but were not, litigated during the prior proceeding is an issue that is not before us.

depend upon any fact or professional knowledge or research that was not considered by the experts testifying at the commitment trial. As her conclusion in her report makes clear, although she considered events and circumstances that occurred after that trial, those did not, in her opinion, significantly increase or decrease the risk that the actuarial instruments estimated based on her scoring. As for her interpretation of the instruments that led to her scores, we agree with the circuit court's analysis that the debate over whether to consider only convictions and adjudications, as opposed to incidents that had sanctions or consequences but no conviction or adjudication, was presented by the experts' testimony at the commitment trial. Dr. Coffey and Dr. Roberts both advanced the same position that Dr. Fields expresses in her report. Dr. Fields' report does not reflect that there is any research or instructions to professionals on how to interpret these instruments on this point that were not available at the time of the time of the commitment trial. Nor is there any indication in her report that her scoring on these actuarial instruments took into account facts not in existence at the time of the commitment trial, and Combs does not contend otherwise.

¶ 35.   Because we conclude that Dr. Fields' opinion did not depend upon any fact or professional knowledge or research that was not considered by the experts testifying at the commitment trial, we hold that the circuit court properly denied Combs' discharge petition without an evidentiary hearing.

*By the Court.*—Order affirmed.