COURT OF APPEALS
DECISION
DATED AND FILED

February 26, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2171-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2014CF121

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CHARLIE L. NEW,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Green Lake County: MARK T. SLATE, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Charlie L. New appeals a judgment convicting him, upon his no-contest pleas, of substantial battery, strangulation and suffocation, false imprisonment, and victim intimidation. New also appeals the order denying his postconviction motion in which he sought either (1) plea withdrawal, claiming counsel was ineffective for misadvising him that a charge dismissed "outright" could not be considered at sentencing or (2) sentence modification. On appeal, he again seeks plea withdrawal but now asks for resentencing. We deny both requests and affirm the judgment and order.

## I. Factual Background

¶2 New's girlfriend reported to police that, over a period of two days, New punched, kicked, choked, and sexually assaulted her, leaving her with a concussion, multiple bruises, black eyes, a broken nose, and a broken tooth. The State charged New with three counts of substantial battery (counts one through three), strangulation and suffocation (count four), false imprisonment (count five), felony witness intimidation (count six), and second-degree sexual assault (count seven). All charges except count six were charged as domestic abuse, infliction of physical pain or injury, under WIS. STAT. § 968.075(1)(a)1. (2017-18).[1]

¶3 New pleaded not guilty by reason of mental disease or defect (NGI). Court-appointed psychologist Kent Berney, Ph.D., concluded that New did not satisfy NGI criteria, noting specifically that his use of a prescribed medication, Lyrica, might support an involuntary intoxication defense but it did not constitute a mental disease or defect for the purpose of an NGI plea under WIS. STAT.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

§ 971.15(1), as he was capable of distinguishing right from wrong. *See State v. Anderson*, 2014 WI 93, ¶29, 357 Wis. 2d 337, 851 N.W.2d 760. New withdrew his NGI plea and pled no contest to counts three through six. The State agreed to dismiss and read in counts one and two and to dismiss count seven, the most serious charge, "outright."[2]

## II. Postconviction

¶4 New faced twenty-five and one-half years' imprisonment on the four counts to which he pled. Calling the victim's ordeal "horrific" and referencing details of the sexual assault, the court described New as "evil." Exceeding the seventeen-year terms the PSI writer and the State recommended, the court sentenced him to a global twenty-one-year sentence.

¶5 New later moved to withdraw his no-contest pleas on three grounds related to count seven being dismissed "outright." He contended: (1) his pleas were not knowingly, intelligently, or voluntarily entered because he was misled about the sentencing consequences; (2) his due process rights were violated because his reasonable expectation about the consequences of an outright dismissal was not met; and (3) defense counsel, Attorney Jeffrey Haase, provided ineffective assistance by informing him that the court would not consider count seven at sentencing, as it was dismissed "outright." In the alternative, New sought sentence modification on grounds of a new factor, i.e., "involuntary intoxication" due to behavioral side effects, such as aggression and irritability, of the Lyrica he had been prescribed for chronic pain.

---

[2] Three counts from two other cases also were dismissed and read in. Those charges are not at issue here.

¶6    Haase withdrew after the plea hearing.  Attorney William Lennon then briefly represented New, and Attorney Paul Zilles represented New at the sentencing hearing.  All three attorneys testified at the *Machner*[3] hearing that they were unfamiliar with *State v. Frey*, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436, a case preceding New's 2016 sentencing.  *Frey* holds that the sentencing court may consider charges that are dismissed outright.  *Id.*, ¶¶4-5.[4]

¶7    Attorney James Rebholz was appointed to represent New as postconviction counsel.  Rebholz contacted Dr. Steven Oakes, an assistant professor of pharmacology at the University of Wisconsin-Madison, to consider New's use of Lyrica in light of the concept of involuntary intoxication.  Oakes testified at the postconviction hearing that "a small subset" of people experience "substantial aggression and irritability" when taking or withdrawing from Lyrica and New's dosage change and sudden stoppage "could" have adversely affected him at the time of his criminal conduct.

¶8    New testified at the hearing that Lyrica made him hostile and aggressive.  He said he began taking it in May 2014, that his doctor adjusted the dosage over the next months due to his complaints about the side effects, and that he stopped taking it on his own two or three days before the incidents at issue because "[t]he side effects were getting too worse."  He also testified that he

---

[3]  *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[4]  There is a distinction between charges that are "dismissed and read in" and those that are "dismissed."  *State v. Frey*, 2012 WI 99, ¶43, 343 Wis. 2d 358, 817 N.W.2d 436.  Read-in charges are acknowledged as true, are subject to restitution, and may not be prosecuted separately in the future.  *Id.*  Dismissed charges may be considered by the court at sentencing, but are not subject to restitution, and whether they ever may be prosecuted depends on the terms of any plea agreement and considerations of due process.  *Id.*  For the circuit court at sentencing, there is no distinction between charges that are "dismissed" or "dismissed outright."  *Id.*

would have rejected the plea agreement and proceeded to trial if Haase had agreed to present an involuntary intoxication defense and if he had been fully informed that the court could consider at sentencing the allegations of a count that is dismissed outright. The court denied his motion. New appeals.

### III. Appeal

### A. Plea Withdrawal Due to Ineffective Assistance of Counsel

¶9      A plea may be withdrawn post-sentencing only if necessary to correct a manifest injustice. *State v. Booth*, 142 Wis. 2d 232, 235, 418 N.W.2d 20 (Ct. App. 1987). The manifest injustice test can be satisfied by a showing that the defendant received ineffective assistance of counsel. *See State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).[5] A defendant has the burden of proving a manifest injustice by clear and convincing evidence. *Id.*

¶10     Whether counsel was ineffective is a question of constitutional fact. *See State v. Jimothy Jenkins*, 2014 WI 59, ¶38, 355 Wis. 2d 180, 848 N.W.2d 786 ("*Jenkins*"). "An appellate court upholds the circuit court's findings of fact unless they are clearly erroneous" but independently determines whether those historical facts meet the constitutional standard for ineffective assistance of counsel. *State v. Dillard*, 2014 WI 123, ¶86, 358 Wis. 2d 543, 859 N.W.2d 44. The clearly erroneous standard also applies to credibility determinations. *State v. Barry Jenkins*, 2007 WI 96, ¶33, 303 Wis. 2d 157, 736 N.W.2d 24.

---

[5] New invokes *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986), suggesting a defect in the plea colloquy. He argues, however, that his plea is infirm due to ineffective assistance of counsel, a factor extrinsic to the plea colloquy. *See State v. Howell*, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48.

¶11 To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Jenkins*, 355 Wis. 2d 180, ¶35. To establish deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances. *Jenkins*, 355 Wis. 2d 180, ¶36. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, ¶37 (citation omitted). Judicial scrutiny of counsel's acts in the context of an ineffective-assistance claim is "highly deferential." *State v. Pitsch*, 124 Wis. 2d 628, 637, 369 N.W.2d 711 (1985). We "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 636 (citation omitted).

### 1. "Dismissed Outright"

### a. Deficient Performance

¶12 In his affidavit in support of his postconviction motion, New averred that he "firmly believed" the court was precluded from considering the sexual-assault count. Haase and New both testified that Haase told New the court would not consider a "dismissed outright" charge at sentencing, that Lennon and Zilles likewise testified that they did not explain the implications of an outright dismissal, and that none of the three were familiar with *Frey*. We will assume for purposes of this decision that such performance was deficient.

6

## b. Prejudice

¶13    Neither Haase's concession that he misinformed New nor the other attorneys' failures to correct that inaccuracy relieves New of clearing the hurdle of proving that the error was prejudicial.

¶14    Without the plea deal, New faced over seventy-two years' imprisonment, forty of them from count seven.  With the plea, he faced twenty-five and one-half years, and was sentenced to twenty-one.  New told the court he understood the plea offer and that the court was not bound by it.  He also did not speak up at sentencing when the court referred to the sexual assault, although he had interjected earlier when the court misidentified someone.

¶15    Further, while he contends that, had he known the court could consider count seven, he would not have accepted the plea offer, as it was "worth the risk of conviction and additional imprisonment" to tell the jury that the victim was lying about the sexual assault, he points to nothing casting doubt on the victim's report of the sexual assault.  A conclusory assertion is not evidence.

¶16    Beyond that, New's sentence did not depend on count seven.  The court acknowledged the allegations but also carefully examined the proper sentencing factors:  protection of the public; the seriousness of the offenses; and New's character, as shown by his criminal history, his failure to accept responsibility for his actions, and his blaming the victim.  Just as a court may consider uncharged and unproven offenses and facts related to offenses resulting in acquittal so as to acquire "full knowledge" of a defendant's character before imposing sentence, *State v. Leitner*, 2002 WI 77, ¶45, 253 Wis. 2d 449, 646

N.W.2d 341 (citation omitted), so, too, may it consider charges that are dismissed outright, *Frey*, 343 Wis. 2d 358, ¶43.[6]

¶17   Had New gone to trial on all of the charges, the result almost certainly "would have been different," but likely not to his advantage, and not such that our confidence in the outcome is undermined. *See Jenkins*, 355 Wis. 2d 180, ¶37. He points to nothing in the record to support his claim that he would not have pled and instead would have gone to trial. We conclude New did not prove the prejudice component.

## 2.   Involuntary Intoxication Defense

### a. Deficient Performance

¶18   New also argues that his attorneys were ineffective for not advancing an involuntary intoxication defense based on Lyrica's "intolerable" side effects.[7] Involuntary intoxication is established if a defendant's intoxicated or drugged condition is involuntarily produced and either renders the defendant incapable of distinguishing between right and wrong or negates the existence of a state of mind essential to the crime. WIS. STAT. § 939.42; *Anderson*, 357 Wis. 2d

---

[6] *Frey* teaches that when considering dismissed charges, it is the "better practice" "to acknowledge and discuss [them] … giving them appropriate weight and describing their relationship to a defendant's character and behavioral pattern, or to the incident that serves as the basis for a plea" and to give the defendant an opportunity to explain or dispute them. *Frey*, 343 Wis. 2d 358, ¶54. We build on *Frey* and recommend that, if the court intends to consider dismissed charges at sentencing, it should give the parties prior notice, ideally during the plea colloquy, of its potential reliance on such charges.

[7] Below, New sought sentence modification on grounds that involuntary intoxication constituted a new factor, necessary for a claim of sentence modification. Here, he casts the issue as counsel's ineffective assistance for failure to raise the defense.

337, ¶22. The use of prescription medication can form the basis of an involuntary intoxication defense under § 939.42. *Anderson*, 357 Wis. 2d 337, ¶29.

¶19 To place intoxication in issue, the defendant must present evidence beyond a mere statement of impairment. *State v. Schulz*, 102 Wis. 2d 423, 430, 307 N.W.2d 151 (1981). The evidence must be both credible and sufficient to warrant consideration of whether he or she was impaired to the extent it materially affected the ability to form the requisite intent. *Id.* The test is whether, construing all the evidence most favorably to the defendant, a reasonable juror could conclude that the person's condition negated the existence of a state of mind essential to the crime. *Id.*

¶20 Haase, Lennon and Zilles testified that they discussed with New information he provided to them about Lyrica's side effects. None of the three deemed it a viable defense strategy or a workable basis for plea withdrawal.

¶21 Zilles, however, used the argument at sentencing. After pointing out the victim's statement in the PSI that she believed New's various medications played a role in his actions, Zilles emphasized that "the main culprit" was Lyrica, noting label warnings about the potential for suicidal ideation, self-harm, changes in mood or behavior, anger, irritability, agitation, aggression, dangerous impulses, or violence.

¶22 Yet New asserts that his attorneys should have done additional forensic investigation before determining that the defense was not viable. "'[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343 (Ct. App. 1994) (citation omitted).

9

¶23  Oakes testified that Lyrica may lead to "substantial aggression and irritability" in "a small subset" of people and that New's dosage change or cessation of it "could be responsible" for his self-reported behavioral changes that led him to engage in criminal conduct. Berney's report similarly indicated that New's increased anger and aggression due to his Lyrica use were based only on New's self-reports. Berney also said it was not apparent to him that New shared his concerns with his medical providers, as New provided no corroborating reports, and that, in his opinion, New was capable of appreciating the wrongfulness of his conduct and conforming his conduct to the requirements of the law. So while Oakes was more persuaded of Lyrica's possible untoward effects than was Berney, even Oakes' conclusions were based on New's self-reports and studies showing effects only on a "small subset" of those studied.

¶24  The record supports the court's findings that all three attorneys reviewed the Lyrica material with New and reasonably determined that involuntary intoxication was not an appropriate defense or would support plea withdrawal. The court itself rejected New's position that Lyrica made him "angry and aggressive and out of control," as that implied that he simply acted out of character on this occasion, when his criminal record included, among other offenses, numerous batteries, one a substantial battery. The court found Zilles' sentencing argument that Lyrica was "the main culprit"—the argument New advanced—was more convincing than Oakes' testimony that Lyrica "could" have been a cause of New's aggression. The court thus concluded it did not know how Zilles could have been more effective even had a forensic pharmacologist like Oakes been involved earlier.

¶25  The court had before it the Lyrica side-effect information he provided to his attorneys, Oakes' report and testimony, and the PSI, which

indicated that both the victim and a long-time friend of New's reported that they believed his medications adversely affect his behavior. New does not specify what further forensic investigation would have revealed.

#### b. Prejudice

¶26    Construing all the evidence most favorably to New, a reasonable juror likely would not conclude that his state of intoxication negated the existence of a state of mind essential to the crime. *Schulz*, 102 Wis. 2d at 430. "We will not second guess trial counsel's selection of trial tactics or strategies in the face of alternatives that he or she has considered." *State v. Nielsen*, 2001 WI App 192, ¶44, 247 Wis. 2d 466, 634 N.W.2d 325. New disagrees with his attorneys' assessments, but he has not shown he was prejudiced by additional investigation about Lyrica's side effects.

### B.  Resentencing

¶27    As an alternative to plea withdrawal, New asks for resentencing, apparently abandoning the request for sentence modification he advanced below.[8] Resentencing generally is the proper method to correct a sentencing error. *State v. Holloway*, 202 Wis. 2d 694, 700, 551 N.W.2d 841 (Ct. App. 1996).

---

[8] If New has not abandoned his sentence modification argument, it still necessarily fails. A sentence may be modified if a defendant shows a "new factor," which is "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'" *State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989) (citation omitted). As noted, New no longer frames his claim of involuntary intoxication as a new factor. But even if he did, while Oakes' report may have been new, its underlying premise that Lyrica could have contributed to New's criminal conduct already was known to the court and the parties at the time of sentencing and was argued there.

¶28    New contends here that resentencing is warranted because he was sentenced in reliance on Berney's "inaccurate" report. Berney wrote that "in [his] review of the literature on Lyrica, there is not information that indicates that increased agitation, irritability or ideas of aggression have been found to be side effects from this medication." Oakes' forensic report opined that New "clear[ly] … was severely affected by the increased dose of [Lyrica] shortly prior to the criminal act due to his cessation of taking the drug" due to its "intolerable" side effects. That one expert opinion is more persuasive than another does not necessarily make an opinion to the contrary "wrong." *State v. Combs*, 2006 WI App 137, ¶29, 295 Wis. 2d 457, 720 N.W.2d 684. New has not shown that he was sentenced on inaccurate information.

        *By the Court*.—Judgment and order affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.