COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1270**

STATE OF WISCONSIN

Cir. Ct. No. 1996CI842

IN COURT OF APPEALS
DISTRICT III

IN RE THE COMMITMENT OF ROY C. O'NEAL:

STATE OF WISCONSIN,

  PETITIONER-RESPONDENT,

 V.

ROY C. O'NEAL,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: BEAU LIEGEOIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Roy O'Neal appeals from an order denying his petition for discharge from a WIS. STAT. ch. 980 (2019-20),[1] commitment. He contends he was entitled to a hearing on the discharge petition because he provided a new expert opinion citing research published after his last discharge hearing and alleging new facts about his conduct on supervision. We affirm.

## BACKGROUND

¶2 In 1996, O'Neal stipulated to a WIS. STAT. ch. 980 commitment as a sexually violent person, based upon his 1975 conviction on the predicate offenses of second-degree murder and attempted rape. O'Neal obtained supervised release in the community in 2015.

¶3 In 2018, O'Neal petitioned for discharge from his commitment based upon treatment progress. The circuit court held a discharge hearing at which three psychologists appeared as expert witnesses, and another psychologist testified as to O'Neal's treatment progress. The treating psychologist, Laura DeMarzo, observed that O'Neal had been making overall positive progress in sex offender and anger management treatment , but he still struggled with impulse control issues that led to some nonsexual rule violations. DeMarzo further noted that O'Neal had begun to earn some unsupervised privileges, but he was still heavily monitored in most situations beyond his own property.

¶4 All three experts diagnosed O'Neal as having some combination of mental disorders, each including sexual sadism and antisocial personality disorder,

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

that affected his emotional or volitional capacity and predisposed him to engage in acts of sexual violence. All three experts then employed actuarial instruments incorporating both static and dynamic risk factors to evaluate O'Neal's likelihood of committing further sexually violent offenses. Dawn Pflugradt testified for the State that O'Neal remained more likely than not to commit another act of sexual violence within his lifetime. Charles Lodl and David Thornton each testified for the defense that O'Neal's lifetime risk of reoffending was less than fifty percent.

¶5   The circuit court gave greater weight to Pflugradt's testimony and concluded "by the razor thin edge" that the State had shown O'Neal was more likely than not to reoffend. The court also noted that it would like to see a greater period of time over which to evaluate O'Neal's performance with more unsupervised privileges, given that he was still being heavily monitored. The court denied the discharge petition, and this court affirmed on appeal.

¶6   In 2019, DeMarzo provided the circuit court with another annual treatment progress report pursuant to WIS. STAT. § 980.07(4), and Pflugradt provided the court with another annual examination report pursuant to § 980.07(1). DeMarzo noted that O'Neal participated in weekly treatment sessions during the review period and demonstrated a high level of treatment engagement. He was managing his mental health conditions through medication. He self-reported having reduced deviant fantasies and masturbatory behavior and successfully using coping mechanisms to deal with two instances of intrusive deviant thoughts—although he had not taken any new polygraphs during the reporting period to verify his self-reports. O'Neal's substantial rule compliance, transparency and treatment engagement resulted in increased unsupervised privileges.

¶7    Pflugradt acknowledged that O'Neal continued to make progress in treatment, was working to gain vocational skills, and had earned additional unsupervised privileges. Pflugradt noted, however, that O'Neal had reacted poorly to the denial of his first discharge petition, initially threatening to reduce his participation in treatment so that he would not be giving his treatment providers "ammunition" against him. In addition, O'Neal had experienced a behavioral lapse during the reporting period by masturbating to a sexual fantasy involving aggressive sex with a teenaged girl he saw at church. Pflugradt concluded that O'Neal's scores on the actuarial instruments and lifetime risk of reoffending remained the same, and they would do so until O'Neal could "demonstrate maintenance of the changes he has made (with no lapses) while his community privileges increase."

¶8    Following the filing of DeMarzo's and Pflugradt's 2019 reports, O'Neal filed a pro se discharge petition asserting that his risk to reoffend was now below the threshold and that his mental disorders were in remission due to his medication. Subsequently appointed counsel requested an additional court-ordered evaluation of O'Neal pursuant to WIS. STAT. § 980.031. Counsel then filed a supplemental discharge petition on O'Neal's behalf, based upon the opinion of the court-appointed psychologist, Sharon Kelley, that O'Neal no longer met the criteria for commitment as a sexually violent person.

¶9    In addition to administering two of the same actuarial instruments that had been discussed by the expert witnesses at O'Neal's first discharge hearing, Kelley also considered what she termed one of the "protective factors" of "[t]ime free." Kelley cited professional research published after O'Neal's last discharge hearing showing that for each year in an average community setting in which a sexual offender has not been convicted of any further offenses (either

sexual or nonsexual), the risk of committing future sexual offenses decreases in a linear and incremental manner. Kelley noted that O'Neal's unsupervised privileges had been expanded since his last discharge hearing to include: going to a coffee bar once per month; using a taxi service once every other week; walking for exercise three days a week; and going to meals and events with his pastor.

¶10 The circuit court held oral argument regarding whether a discharge hearing was warranted. O'Neal asserted he was entitled to a hearing because there had been changes in both the science and the amount of his unsupervised time in the community since his last hearing. The State responded that the concept of offense-free time in the community was already accounted for in the actuarial instruments, and Kelley had not explained how it further lowered O'Neal's risk in this case. The State acknowledged that "increased freedoms over time" could warrant a hearing, but it argued that the changes that had occurred since the last review period were "not enough."

¶11 The circuit court observed that the additional privileges O'Neal had earned since his last hearing involved "simple basic tasks, devoid of any of the regular daily stresses that people have in the community, where a significant amount of structure and monitoring is still required." Thus, the court reasoned, the additional privileges did not alleviate the court's expressed concern at the last hearing that there had been an insufficient opportunity to evaluate O'Neal's unsupervised behavior. The court further noted that Kelley's report did not assert that the new study provided anything significantly new to the professional body of knowledge, as opposed to reaffirming prior available information. The court denied the discharge petition without a hearing, and O'Neal now appeals.

## DISCUSSION

¶12    A person committed under WIS. STAT. ch. 980 is entitled to periodic reexamination and may petition the circuit court for discharge at any time.  WIS. STAT. §§ 980.07 and 980.09(1).  However, the court shall deny a discharge petition without an evidentiary hearing unless the petition alleges facts from which the court or a jury likely would conclude that the petitioner's condition has changed since the initial commitment or most recent discharge petition, such that the petitioner no longer meets the criteria for commitment as a sexually violent person.  Sec. 980.09(1).  This court will independently review whether the statutory criteria for obtaining a discharge hearing have been satisfied.  *State v. Hager*, 2018 WI 40, ¶19, 381 Wis. 2d 74, 911 N.W.2d 17.

¶13    In making the determination of whether a discharge hearing is warranted, a circuit court may consider the entire record, including the facts alleged in the petition and the State's response, evidence introduced at the initial commitment trial or most recent trial on a petition for discharge, any past or current evaluations in the record or other documents provided by the parties, and arguments by counsel.  WIS. STAT. § 980.09(2).  This limited paper review tests the sufficiency of the petition and is aimed at weeding out meritless or unsupported petitions.  *State v. Arends*, 2010 WI 46, ¶¶26-30, 325 Wis. 2d 1, 784 N.W.2d 513.

¶14    A three-justice plurality of our supreme court has instructed that a court should "carefully examine, but not weigh" facts both favorable and

6

unfavorable to the petition.[2]  *Hager*, 381 Wis. 2d 74, ¶30.  That is to say, a court should scrutinize the parties' submissions "to ensure they contain facts upon which a trier of fact could reasonably rely" in determining whether the petitioner is no longer sexually violent, but it should not choose between conflicting sets of facts or allegations satisfying that threshold.  *Id.*; *see also Arends*, 325 Wis. 2d 1, ¶¶30, 39.  A trier of fact cannot reasonably rely upon a new expert opinion that the petitioner is no longer sexually violent unless that opinion is based upon "something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent."  *State v. Combs*, 2006 WI App 137, ¶32, 295 Wis. 2d 457, 720 N.W.2d 684.

¶15    The new expert opinion on which O'Neal relies in his current discharge petition was based in part upon: (1) new research and professional knowledge regarding the effect that "time free" in the community has upon a sex offender's risk to reoffend; and (2) the additional time O'Neal has spent under supervision in the community since his last discharge hearing, with increased privileges and without committing any new sexual offenses.  O'Neal contends the circuit court erred by "weighing" this evidence when it dismissed the new research as insignificant and deeming the amount of time O'Neal had been on supervised release since his last hearing to be insufficient.  We disagree.

---

[2]  Two concurring justices viewed WIS. STAT. § 980.09(2) as authorizing the circuit court to permissibly weigh evidence to determine whether a jury "would likely conclude" the petitioner's condition had sufficiently changed.  *State v. Hager*, 2018 WI 40, ¶¶66, 77, 381 Wis. 2d 74, 911 N.W.2d 17.  Two dissenting justices viewed the statute as impermissibly authorizing the court to weigh evidence.  *Id.*, ¶84.  We treat the lead opinion as controlling as to the holding that the court cannot weigh evidence when reviewing a petition for discharge.  *See State v. Griep*, 2015 WI 40, ¶36, 361 Wis. 2d 657, 836 N.W.2d 567.

¶16    We conclude that the circuit court was not weighing the evidence because it was not choosing among conflicting factual allegations as to O'Neal's conduct since the last hearing or differing expert opinions as to the validity or applicability of the new research into the effect of time free on recidivism rates. Rather, the court was considering whether a trier of fact could reasonably rely upon Kelley's new expert opinion to "likely conclude" that O'Neal's condition had sufficiently changed since his last hearing, such that he no longer met the criteria for commitment as a sexually violent person.

¶17    Based upon her scoring of the Static-99R and VRS-SO actuarial instruments, Kelley calculated O'Neal to have a 25% risk of sexual recidivism over the next ten years. Taking into account the non-actuarial factor of O'Neal's time free in the community, Kelley extrapolated that O'Neal had a 27% risk of sexual recidivism over twenty years. Further considering the probability that actuarial data on recidivism based on disclosed offenses could underestimate actual recidivism, Kelley concluded there was a 34% risk that O'Neal would commit another sexually violent act in his lifetime.

¶18    At O'Neal's prior discharge hearing, however, the circuit court rejected Lodl's expert opinion—based on his distinct scoring of the actuarial instruments—that O'Neal's risk of sexual recidivism over a ten-year period was between 26.7% and 37.9%. The court instead accepted the shared expert opinion of both Pflugradt and Thornton that O'Neal's risk of sexual recidivism based on

their scoring of actuarial instruments was about 43% over a ten-year period and about 52% over a fifteen-year period.[3]

¶19  Pflugradt's scoring of the actuarial instruments did not change in her updated 2019 report.  Kelley's report offered a different scoring of the same actuarial instruments, but it did not directly link that difference to the new research and additional facts about O'Neal's performance on supervision.  Instead, Kelley incorporated the theorized impact of O'Neal's time free in the community into her assessment of his lifetime sexual recidivism risk *after* calculating a much lower baseline ten-year sexual recidivism risk from the actuarial instruments than the circuit court had previously accepted.  Thus, her ultimate conclusion was largely based upon an already rejected premise.

¶20  By Kelley's own analysis, O'Neal's lifetime risk of sexual recidivism would be over one-third higher than the baseline ten-year risk established by the actuarial instruments—even taking into account O'Neal's time free in the community.  Kelley did not offer any opinion that O'Neal's lifetime risk of reoffending would be less likely than not if starting from the ten-year baseline of the 43% risk of sexual recidivism the circuit court previously accepted rather than Kelley's 25% ten-year baseline.

¶21  Aside from the limited utility of new research and numerical risk calculations here, we also agree with the circuit court that changes in O'Neal's privileges and behavior since his last hearing were insufficient to warrant a

---

[3] The circuit court rejected Thornton's subsequent downward adjustment of the risk that O'Neal would engage in future acts of sexual violence based upon Thornton's evaluation of other, non-actuarial factors.

hearing. A fact finder previously concerned about the lack of a sufficient opportunity to evaluate O'Neal's unsupervised conduct would not likely conclude that the incremental increases in O'Neal's unsupervised privileges demonstrated that he no longer met the criteria for commitment as a sexually violent person. This circuit court determination is further supported when taking into consideration O'Neal's poor reaction to the denial of his prior petition and his behavioral lapse involving masturbating to an aggressive sexual fantasy with a teenaged girl. Based upon the available record as a whole, we conclude that the circuit court properly denied O'Neal's discharge petition without a hearing.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.