IN RE the COMMITMENT OF Herbert O. RICHARD:

STATE of Wisconsin, Petitioner-Respondent,

v.

Herbert O. RICHARD, Respondent-Appellant.†

Court of Appeals

*No. 2010AP1188. Submitted on briefs March 16, 2011.
—Decided April 27, 2011.*

2011 WI App 66

(Also reported in 799 N.W.2d 509.)

† Petition for Review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven D. Grunder*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J.   Herbert O. Richard appeals from a circuit court order denying his petition for discharge from his commitment as a sexually violent person under Wis. Stat. ch. 980 (2009–10).[1] The sole basis for Richard's petition for discharge is a research paper written by several psychologists who argue that sex offenders are less likely to commit further acts of sexual violence as they get older. The circuit court ruled that the research paper, standing alone, was not evidence that Richard's condition had changed such that he was no longer in need of commitment. The court denied Richard's petition without granting him a discharge hearing. We agree with the circuit court and hold that a research paper is not sufficient evidence to demonstrate that a sex offender's condition has changed. The order of the circuit court is affirmed.

## FACTS

¶ 2.   Richard has a long history of committing sexual assault. In 1977 he was convicted of fourth-

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

degree sexual assault after he snuck into a woman's bedroom and attempted to rape her. Six years later he was convicted of false imprisonment of a ten-year-old girl. Richard stipulated that the victim did not report that she was also sexually assaulted by Richard because Richard threatened to kill her father if she reported the assault. In 1986, after Richard had escaped from prison, he abducted and sexually assaulted a nine-year-old girl. Richard was subsequently convicted of first-degree sexual assault and sentenced to two thirty-year prison terms.

¶ 3. As Richard's mandatory prison release date approached, the State filed a WIS. STAT. ch. 980 petition to have Richard committed as a sexually violent person. In a ch. 980 proceeding, the State must prove beyond a reasonable doubt that the offender is a sexually violent person. WIS. STAT. § 980.05(3). " 'Sexually violent person' means a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." WIS. STAT. § 980.01(7). "Likely" means "more likely than not," which means that the offender is more than 50% likely to commit another sexually violent offense. *State v. Smalley*, 2007 WI App 219, ¶¶ 3, 10, 305 Wis. 2d 709, 741 N.W.2d 286.

¶ 4. At Richard's WIS. STAT. ch. 980 trial, two psychologists—Janet Hill and Richard Elwood—testified that Richard is a pedophile with personality disorder. Hill also diagnosed Richard with "paraphilia." Both psychologists reached the conclusion that Richard was more likely than not to commit another act of sexual violence.

¶ 5. Hill and Elwood each utilized three actuarial tests to assess whether Richard was likely to commit

711

another act of sexual violence. The first test that Hill administered was the Rapid Risk Assessment of Sex Offense Recidivism test (RRASOR), which Richard scored a three on. Hill testified that of the individuals who score a three on this test, 48% of them are reconvicted of another sexually violent offense within seventeen years. Additionally, Hill administered a Static-99 test to Richard. Richard scored an eight on this test. Hill testified that the developers of the Static-99 test lump all individuals who score between six and ten into the same risk category, and that 52% of the members of this cohort were reconvicted of another sexual offense within fifteen years. Finally, Hill administered a Minnesota Sex Offender Screening Tool— Revised test (MnSOST-R). Richard scored a twelve on this test, and Hill testified that 54% of sex offenders who scored between eight and twelve were rearrested for another sexual offense within six years. Elwood also gave Richard the same scores on the RRASOR, Static-99, and MnSOST-R tests.

¶ 6. In addition to the actuarial tests, the psychologists relied on other factors as well in reaching their conclusion that Richard was more likely than not to commit another act of sexual violence. For example, Elwood noted that Richard was a sexual deviant, that he previously violated the terms of his supervision, that he did not complete sex offender treatment, and that Richard's last crime was an impulsive act. Hill looked at other factors as well.

¶ 7. A jury subsequently found that Richard was a sexually violent person and the circuit court entered an order committing Richard to the Department of Health and Family Services for control, care, and treatment until Richard is no longer a sexually violent person.

¶ 8.    In October 2009, Richard filed a petition for discharge on the grounds that his condition changed and that he was no longer a sexually violent person. The basis for Richard's petition was a research paper written by the developers of the Static-99 test arguing that the test should be revised to reflect the lower probability of older sex offenders committing another offense. Under the new scoring system, Richard alleges that he would score a seven instead of an eight on the Static-99 test, and that the likelihood of him committing another sexually violent offense, according to the revised test, would decrease.

¶ 9.    The circuit court dismissed the petition without holding a hearing. The court ruled that Richard's petition did not allege any new facts to show that his condition changed; rather, Richard was only providing a different interpretation of the facts. Richard appeals and argues that he is entitled to a discharge hearing.

## STANDARD OF REVIEW

¶ 10.    This case requires us to interpret WIS. STAT. § 980.09. The interpretation and application of a statute is a question of law that we review de novo. *Xerox Corp. v. DOR*, 2009 WI App 113, ¶ 46, 321 Wis. 2d 181, 772 N.W.2d 677, *review denied,* 2010 WI 5, 322 Wis. 2d 123, 779 N.W.2d 177 (Dec. 14, 2009) (No. 2007AP2884).

## DISCUSSION

■■

¶ 11.    An offender who is committed as a sexually violent person under WIS. STAT. ch. 980 may petition the circuit court for discharge at any time. WIS. STAT.

§ 980.09(1).[2] The circuit court must then engage in a two-step review process to determine if the offender is entitled to a discharge hearing. First, the court must conduct a "paper review" of the offender's petition and its attachments to see if there are any alleged facts "from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person." *State v. Arends*, 2010 WI 46, ¶¶ 25–26, 325 Wis. 2d 1, 784 N.W.2d 513 (quoting § 980.09(1)). The purpose of the paper review "is to weed out meritless and unsupported petitions." *Arends*, 325 Wis. 2d 1, ¶ 28. If there are no facts alleged from which a trier of fact could conclude that the offender is no longer a sexually violent person, the circuit court must deny the petition. *Id.*, ¶ 30.

¶ 12. If the offender passes the initial screen, the circuit court shall proceed to the second step of the review process. *Id.*; WIS. STAT. § 980.09(2). Under the second step of this process, the court must consider: (1) any current and past reexamination reports or treatment progress reports filed under WIS. STAT. § 980.07; (2) relevant facts in the petition and in the State's written response; (3) arguments of counsel; and (4) any supporting documentation provided by the person or the State. *Arends*, 325 Wis. 2d 1, ¶ 32. If, after this second step in the review process, the circuit court determines that a fact finder could conclude that

---

[2] While the first subsection of WIS. STAT. § 980.09 is not numbered, the next subsection is listed as § 980.09(2). We shall therefore refer to the first section of § 980.09 as § 980.09(1). *See State v. Arends*, 2010 WI 46, ¶ 23 n.16, 325 Wis. 2d 1, 784 N.W.2d 513.

an offender no longer meets the criteria for commitment as a sexually violent person, the offender is entitled to a discharge hearing. *Id.*, ¶ 43. If not, the offender's discharge petition must be denied. *Id.*

■

¶ 13.  Richard argues that the circuit court improperly dismissed his petition for discharge and that he is entitled to a discharge hearing. According to Richard, the research paper he submitted that argues for changes to the Static-99 scoring system represents a fact from which a fact finder could conclude that his condition has changed such that he is no longer a sexually violent person. We disagree. As the circuit court noted, Richard did not allege any new historical facts to show that his condition has changed since he was committed. Rather, Richard submitted a research paper that is unassociated with his specific condition. That paper provides no insights into *Richard's* likelihood of reoffending.

¶ 14.  The psychologists who evaluated Richard applied three actuarial tests to the facts of Richard's condition and concluded that Richard was more likely than not to commit another act of sexual violence. The psychologists also relied on other substantial factors in their evaluation. Richard's petition relies entirely on a research report that suggests changes to the scoring model of one of the three tests used by the psychologists who evaluated Richard. We conclude that a research paper by itself is not sufficient to get an offender past the initial "paper review" stage in the two-step review process laid out by WIS. STAT. § 980.09 and *Arends.*

¶ 15.  Richard also argues that he is entitled to a discharge hearing based on our decisions in *State v. Pocan,* 2003 WI App 233, 267 Wis. 2d 953, 671 N.W.2d

715

860, and *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684.[3] Neither of these cases compels the result that Richard seeks.

¶ 16. In *Pocan*, the offender was committed in 1998. *Pocan*, 267 Wis. 2d 953, ¶ 2. After his commitment, Pocan had several psychological reexaminations, and each time the reviewing psychologists did not recommend Pocan's release. *Id.*, ¶ 3. Pocan underwent another reexamination in 2002, and this time a psychologist—using actuarial tables not available when Pocan was originally committed—stated that he could not conclude that Pocan was still in need of commitment. *Id.*, ¶ 4. Pocan petitioned for discharge, and we agreed that he was entitled to a probable cause hearing as Pocan had produced a new psychological examination based on new actuarial tables. *Id.*, ¶¶ 4, 11–14.

¶ 17. Richard argues that in *Pocan* we held that the existence of a new actuarial table is sufficient to show that an offender is no longer a sexually violent person. This is a misinterpretation of *Pocan*. What we

---

[3] WISCONSIN STAT. § 980.09 was rewritten in 2006. *See* 2005 Wis. Act 434, § 123. Under the previous version of the statute, an offender seeking a petition for discharge had two options. He could either file a petition with the permission of the Secretary of Health and Family Services or without the Secretary's permission. Sec. 980.09 (2003–04). If the offender filed a petition with the permission of the Secretary, a discharge hearing would be held. Sec. 980.09(1)(a) (2003–04). If he filed it without the Secretary's permission, the court would first hold a probable cause hearing to determine if the offender was entitled to a discharge hearing. Secs. 980.09(2)(a)-(b) (2003–04).

The distinctions between the current and the previous version of WIS. STAT. § 980.09 do not affect our analysis of either *State v. Pocan*, 2003 WI App 233, 267 Wis. 2d 953, 671 N.W.2d 860, or *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684.

716

said was that an offender could show that he is no longer a sexually violent person by showing progress in his treatment, and that "[a] new *diagnosis* would be another way of proving someone is not still a sexually violent person." *Id.*, ¶ 12 (emphasis added). The new diagnosis of Pocan was based on new actuarial tables; we did not say that a new actuarial table by itself could be used as evidence that an offender was no longer a sexually violent person. As Richard has not undergone a new psychological examination, *Pocan* is inapplicable.

¶ 18.   In *Combs*, the offender was committed after a jury found him to be a sexually violent person. *Combs*, 295 Wis. 2d 457, ¶ 8. At Combs's trial, three psychologists testified on Combs's likelihood of reoffending. *Id.*, ¶ 3. While all three diagnosed Combs with a mental disorder, only one psychologist testified that Combs met the criteria for commitment. *Id.* After Combs was committed, he underwent his statutorily required mental reexamination. *Id.*, ¶ 9. The psychologist who conducted the reexamination concluded that Combs was still in need of commitment. *Id.*, ¶ 10. Combs then requested a court-appointed expert to evaluate him and she opined that Combs no longer needed to be committed. *Id.*, ¶ 12. The court-appointed psychologist, however, did not use any new actuarial instruments in reaching her conclusion; she just interpreted and scored the results differently. *Id.*, ¶¶ 17–18. We held that the court-appointed psychologist's opinion was not enough to entitle Combs to a discharge hearing. We stated that to show probable cause that an offender was no longer sexually violent, "an expert's opinion must depend upon something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding." *Id.*, ¶ 32. As the court-appointed psychologist's opinion was not based on any new facts,

717

professional knowledge, or research, Combs had not presented evidence that would entitle him to a discharge hearing. *Id.*, ¶ 35.

¶ 19.   Richard argues that *Combs* held that a new actuarial table by itself is enough to demonstrate that an offender is no longer a sexually violent person. This is not so. We stressed in *Combs* that the problem was that the court-appointed psychologist's *report* was not based upon any new actuarial tools or methods. Richard improperly deduces that *Combs* held that new actuarial research, absent a psychological examination, is enough to demonstrate that an offender is no longer a sexually violent person. *Combs*, like *Pocan*, is not controlling as Richard has not undergone another psychological evaluation using the research report he cited.

## CONCLUSION

¶ 20.   As Richard's petition for discharge does not clear the "paper review" step, his request for a discharge hearing is denied.

*By the Court.*—Order affirmed.