IN RE the COMMITMENT OF Charles M. ERMERS, Jr.:
STATE of Wisconsin, Petitioner-Respondent,

v.

Charles M. ERMERS, Jr., Respondent-Appellant.

Court of Appeals

*No. 2010AP2634. Submitted on briefs May 11, 2011.
—Decided June 30, 2011.*

2011 WI App 113

(Also reported in 802 N.W.2d 540.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Mark A. Neuser*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Vergeront, P.J., Higginbotham and Blanchard, JJ.

¶ 1. VERGERONT, P.J. The issue on this appeal concerns the pleading requirements of a petition for discharge from a commitment as a sexually violent person under Wis. Stat. ch. 980 (2009–10).[1] The statutory language in dispute is the requirement in § 980.09(1)[2] that the petition must allege "facts from which the court or jury may conclude the person's

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] The first subsection of Wis. Stat. § 980.09 is not numbered but the second subsection is identified as § 980.09(2). We therefore refer to the first subsection as § 980.09(1). *See State v. Arends*, 2010 WI 46, ¶ 23 n.16, 325 Wis. 2d 1, 784 N.W.2d 513.

condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person." We conclude that the "change" referred to in this sentence includes not only a change in the person himself or herself, but also a change in the professional knowledge and research used to evaluate a person's mental disorder or dangerousness, if the change is such that a fact finder could conclude the person does not meet the criteria for a sexually violent person. We further conclude that the amended discharge petition of Charles Ermers, Jr., fulfills this requirement because the attached report contains an expert opinion that, based on new professional knowledge and research, Ermers does not meet the standard of being "more likely that not" to commit future acts of sexual violence. For this reason and other reasons we explain in the opinion, we reverse the circuit court's order denying Ermers a discharge hearing and remand for a discharge hearing.

## BACKGROUND

¶ 2. Ermers was convicted in 1986 of first-degree sexual assault of a seven-year-old girl. He was released in 1993. Two years after his release Ermers was convicted of first-degree sexual assault of a child and convicted of child abuse with intent to cause harm for sexually assaulting his girlfriend's five-year-old son.

¶ 3. In 2003, as the date for Ermers' mandatory release approached, the State filed a petition seeking to detain Ermers as a sexually violent person within the meaning of Wis. Stat. § 980.01(7) (2001–02). At that time, in order to commit a person as a sexually violent person, the State had to prove beyond a reasonable doubt that (1) the person had been adjudged to have committed

454

a sexually violent offense; (2) the person had a mental disorder that predisposes the person to acts of sexual violence; and (3) there was a substantial probability the person would engage in acts of sexual violence. §§ 980.01(7), 980.02(2), 980.05(3)(a) (2001–02). At Ermers' commitment trial, two experts testified that they had diagnosed Ermers with pedophilia and antisocial personality disorder and that there was a substantial risk that he would commit another sexually violent offense. The court found Ermers to be a sexually violent person and ordered him committed to the Department of Health and Family Services for control, care, and treatment.

¶ 4. After Ermers' commitment, the department conducted annual re-examinations as required by Wis. Stat. § 980.07(1).[3] Each re-examination diagnosed Ermers with pedophilia, nonexclusive type (attracted to males and females), and with antisocial personality disorder. Each reported a score of four (on a scale from zero to six) on the RRASOR risk assessment and a score of eight (on a scale from zero to twelve) on the Static-99 risk assessment, which, in the opinion of each examiner, put Ermers in the high risk range on both assessments. Each examiner recommended that the court not consider Ermers for supervised release. The last re-examination pertinent to this appeal was conducted in July 2009.

¶ 5. In September 2009 Ermers filed a petition for discharge pursuant to Wis. Stat. § 908.09. By this time the "substantial probability" requirement for engaging in future acts of sexual violence had been changed to "more likely than not," *see* Wis. Stat. § 980.01(1m), (7),

---

[3] In addition to the annual re-examination, Wis. Stat. § 980.07 requires that the treating professional shall prepare a treatment progress report. § 980.07(1), (4).

455

with the other requirements remaining the same.[4] The court appointed Dr. Craig Rypma to evaluate Ermers regarding whether he was suitable for discharge.

¶ 6. Dr. Rypma issued a report recommending that Ermers be discharged because he "no longer qualifies under Wisconsin's statute as a 'sexually violent person.' " In Dr. Rypma's opinion, Ermers continued to have a mental disorder—pedophilia—that predisposed him to commit acts of sexual violence. However, in Dr. Rypma's opinion, Ermers did not meet the standard of being "more likely that not" to commit future acts of sexual violence. The basis for this opinion, Dr. Rypma explained, was recent research, including research conducted by the authors of the Static-99, that that instrument overestimated the risk of sexually reoffending. Referring to Ermers' score of eight on the Static-99, Dr. Rypma stated:

> Using the old, now outdated normative data, a score higher than 5 places the individual in the highest risk category possible on this instrument. Mr. Ermers received a score which would have previously placed him in the medium-high category. However, using newer and purportedly more accurate norms, Mr. Ermers would now seem to be associated with a group of individuals who recidivated sexually *somewhere between 23.0% and 42.8% over 10 years,* and given Mr. Ermers' exposure to treatment, can reasonabl[y] be assumed to be closer to the *23.0% rate.* [Emphasis added.]

¶ 7. Ermers filed an amended petition for discharge based on Dr. Rypma's conclusion and he attached and incorporated Dr. Rypma's report. The State moved to dismiss Ermers' petition, asserting that nei-

---

[4] This change was made by 2003 Wis. Act 187, § 2, and was effective April 22, 2004.

ther the petition nor Dr. Rypma's report set forth facts indicating a change in Ermers' condition relative to risk, as required by WIS. STAT. § 980.09. The court agreed with the State, granted the motion to dismiss, and denied Ermers' request for discharge.

¶ 8. After the circuit court denied the petition, the supreme court decided *State v. Arends*, 2010 WI 46, 325 Wis. 2d 1, 784 N.W.2d 513, which addressed the statutory requirements for obtaining a discharge hearing under WIS. STAT. § 980.09. Ermers filed a motion for reconsideration, arguing that he was entitled to a discharge hearing under *Arends*. The circuit court denied the motion.

## DISCUSSION

### I. Statutory Background and Parties' Positions

¶ 9. On appeal Ermers renews his argument that he is entitled to a discharge hearing under WIS. STAT. § 980.09(1) and (2).

¶ 10. To provide context for the parties' dispute, we briefly describe the process for obtaining a discharge hearing. The process begins with the filing of a petition for discharge by the committed person. § 980.09(1). If the petition does not allege "facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person," the circuit court is to deny the petition without a hearing. *Id.* If, on the other hand, the court determines the petition does allege the requisite facts, then the court reviews the petition and certain other documents to determine if they "contain[] facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a

457

sexually violent person." § 980.09(2). If the court determines this standard is met, the court is to hold a discharge hearing. § 980.09(2), (3); *Arends*, 325 Wis. 2d 1, ¶ 43. The person is entitled to discharge if the State does not show at the hearing by clear and convincing evidence that the "person meets the criteria for commitment as a sexually violent person." § 980.09(3), (4).

¶ 11. The parties' dispute focuses on the meaning of the italicized language in the requirement in Wis. Stat. § 980.09(1) that the petition must allege facts from which the fact finder may conclude that "*the person's condition has changed since the date of his or her initial commitment order* so that the person does not meet the criteria for commitment as a sexually violent person." (Emphasis added.)

¶ 12. Ermers contends that his amended petition, which incorporates Dr. Rypma's report, meets the requirement in Wis. Stat. § 980.09(1) of alleging facts that show his "condition has changed since the date of his . . . initial commitment order so that [he] does not meet the criteria for commitment as a sexually violent person."[5] This is so, according to Ermers, because Dr. Rypma opines that Ermers is not more likely than not to commit future acts of sexual violence and this opinion is based on new professional knowledge and research that was not available at the time of the commitment trial and is also based on Ermers' exposure to treatment since his commitment.[6]

---

[5] Reference to "petition" in Wis. Stat. § 980.09(1) includes the documents attached to the petition. *Arends*, 325 Wis. 2d 1, ¶ 25 n.17.

[6] Ermers does not appear to take the position that Dr. Rypma would arrive at the same conclusion based on the treatment Ermers was exposed to since his commitment if there were no change in the professional knowledge and research

¶ 13. In his argument, Ermers relies on a decision of this court, *State v. Pocan*, 2003 WI App 233, 267 Wis. 2d 953, 671 N.W.2d 860, which was decided under a prior version of WIS. STAT. § 980.09. Ermers' position is that *Arends* gives *Pocan* continuing validity and supports his position that the amended petition meets the requirements of WIS. STAT. § 908.09(1).

¶ 14. The State responds that Ermers' amended petition does not meet the requirement of alleging that his "condition has changed." The State construes this language to mean that the petitioner's mental disorder must have changed. In other words, according to the State, there must be facts alleging "either a decline in the seriousness of [his] mental disorder or the diagnosis of a less dangerous mental disorder." As we understand the State's position, the change in the mental disorder cannot be the result of a change in professional knowledge or research, but must be the result of a change in the person himself or herself. The State reads *Arends* to support this position.

■

¶ 15. In order to resolve the parties' dispute, we must interpret and apply WIS. STAT. § 980.09 in light of existing case law. This presents a question of law, which we review de novo. *See Arends*, 325 Wis. 2d 1, ¶ 13.

¶ 16. In the following paragraphs we first examine *Pocan*, 267 Wis. 2d 953, which held, under a prior version of WIS. STAT. § 980.09, that an expert opinion based on new actuarial tables entitled the committed person to an initial hearing on his discharge petition. We next examine *Arends*, which addresses the current

regarding the Static-99. Therefore, we assume that a necessary component of Dr. Rypma's opinion is the change in professional knowledge and research.

459

version of § 980.09. We conclude that *Arends* does not resolve the issue whether the *Pocan* holding retains validity under the current version of § 980.09. We then examine a very recent case from this court, *State v. Richard*, 2011 WI App 66, No. 2010AP1188 (Apr. 27, 2011), that discusses *Pocan*, but does not resolve the issue presented in this case. With this background from the case law, we analyze the disputed statutory language in § 980.09(1). We conclude that the "change" referred to includes not only a change in the person himself or herself, but also a change in the professional knowledge and research used to evaluate a person's mental disorder or dangerousness, if the change is such that a fact finder could conclude the person does not meet the criteria for a sexually violent person.

## II. *Pocan*

¶ 17. The version of WIS. STAT. § 980.09 in effect prior to the current version had different procedures for obtaining a discharge hearing. *See Arends*, 325 Wis. 2d 1, ¶¶ 18–22 (discussing prior version).[7] WISCONSIN STAT. § 980.09 (2001–02), the prior version relevant to our decision in *Pocan*, provided that, upon the filing of a petition for discharge, the court was to "set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person." § 980.09(2)(a) (2001–02). If the court determined there was probable cause to believe the person was "no longer a sexually violent person," then the person was entitled to a discharge hearing at which the State had the burden of proving the person

---

[7] The current WIS. STAT. § 908.09 was enacted by 2005 Wis. Act 434, effective August 1, 2006.

was "still a sexually violent person." § 980.09(2)(b) (2001–02).

¶ 18. In *Pocan*, the discharge petition was accompanied by a re-examination report that used actuarial tables unavailable at the time of the commitment hearing and concluded that Pocan's " 'mental disorders [did] not pre-dispose [him] to engage in acts of sexual violence . . . .' " *Pocan*, 267 Wis. 2d 953, ¶ 4. The circuit court did not afford *Pocan* a probable cause hearing. *Id.*, ¶ 8. On appeal the State conceded that Pocan was entitled to a probable cause hearing, but the State contended that the error did not require reversal because the re-examination report did not provide any evidence that Pocan's condition had improved. *Id.*, ¶ 9 In the State's view, Pocan needed to show that his condition had improved in order to show that he was not "still" a sexually violent person. *Id.*, ¶ 11.

¶ 19. We rejected the State's argument, explaining:

> We agree that progress in treatment is one way of showing that a person is not still a sexually violent person. However, we conclude that is not the only way. A new diagnosis would be another way of proving someone is not still a sexually violent person. A new diagnosis need not attack the original finding that an individual was a sexually violent person. Rather, a new diagnosis focuses on the present. The present diagnosis would be evidence of whether an individual is still a sexually violent person.

> The circuit court found Pocan to be a sexually violent person when it committed him in 1998. He now argues new diagnostic tools show that he is not a sexually violent person. If the court finds Pocan is not

sexually violent now, that means he is not still a sexually violent person.[8]

*Id.*, ¶¶ 12–13 (footnote added).

¶ 20. We re-affirmed *Pocan* in *State v. Combs*, 2006 WI App 137, ¶ 25, 295 Wis. 2d 457, 720 N.W.2d 684, which addressed the same discharge statute.[9] We noted in *Combs* that, despite our use of the term "new diagnosis" in *Pocan* (see paragraph 19 above), the new information in *Pocan* was not a diagnosis of a different mental disorder but new actuarial tables used to evaluate the likelihood that Pocan's mental disorder would predispose him to engage in future acts of sexual violence. *Id. Pocan* held, we stated, that "probable cause to believe a person is 'no longer . . . sexually violent' may be established by a method professionals use to evaluate whether a person is sexually violent that was not available at the time of the prior examination, as well as

---

[8] We recognize that the State in *Pocan*, in addition to relying on the "still a sexually violent person" language in Wis. Stat. § 980.09(2)(a) (2001–02), also relied on language similar to the current § 980.09(1) that was used at that time in another section providing another option for a discharge hearing. *State v. Pocan*, 2003 WI App 233, ¶ 10, 267 Wis. 2d 953, 671 N.W.2d 860. Specifically, § 980.10 (2001–02) (which has since been repealed) required that the discharge petition contain "facts upon which a court could find that the *condition* of the person had *so changed* that a hearing [was] warranted." *Id.*, ¶ 10 (emphasis added). However, although the State in *Pocan* viewed this italicized language as similar in meaning to "still a sexually violent person," our analysis addressed only the meaning of "still a sexually violent person," the phrase used in the section applicable to Pocan's petition for discharge.

[9] The statute at issue in *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684, Wis. Stat. § 980.09 (2003-04), is virtually identical to § 980.09 (2001–02), the statute at issue in *Pocan*.

by a change in the person himself or herself." *Id.* (omission in original).

III. *Arends*

¶ 21. In *Arends* the court explained the two-step process circuit courts are to follow under the current Wis. Stat. § 980.09(1) and (2) in determining whether to hold a discharge hearing. *Arends*, 325 Wis. 2d 1, ¶¶ 3–5. In discussing § 980.09(1), the court quoted the "condition has changed" language at issue in this case. *Id.*, ¶¶ 23, 26. However, the court did not focus on this language in discussing the circuit court's inquiry in the first step under § 980.09(1).

> The standard here looks to what a court or jury "may conclude" from the allegations in the petition. Thus, in order to pass § 980.09(1) review, the court must determine that a reasonable trier of fact could conclude from the facts alleged in the petition and its attachments that the petitioner does not meet the criteria for commitment as a sexually violent person. Allegations sufficient to support relief for the petitioner would necessarily have to show that the petitioner no longer meets one or more of the three statutory requirements for being a sexually violent person under § 980.01(7). As reflected in the standardized form petition, the allegations will most likely challenge the requirement that a committed person have a mental disorder that predisposes him or her to acts of sexual violence, and/or that the committed person is more likely than not to commit another violent sexual offense.

*Id.*, ¶ 27.

¶ 22. The *Arends* court concluded that the petition with an attached report from a psychologist met this standard. *Id.*, ¶ 48 n.24. The court did not elabo-

463

rate on the contents of the report beyond explaining that the report concluded " 'to a reasonable degree of professional certainty' that Arends was 'not more likely than not to sexually reoffend.' " *Id.*, ¶ 10.

¶ 23. We agree with Ermers that *Arends* does not suggest that the allegations in a petition—including the expert opinion in an attached report—are insufficient unless they allege a change in the person's mental disorder or dangerousness that does not depend upon a change in professional knowledge or research. Indeed, the *Arends* court concludes that the expert report attached to that petition was sufficient under Wis. Stat. § 980.09(1) without mentioning any such requirement.[10] In addition, in several places the *Arends* court discusses or summarizes the circuit court's inquiries under § 980.09(1) and (2) without making any distinction based on the "condition has changed" language in § 980.09(1). Instead, the *Arends* court uses the phrase "does not meet the criteria for commitment as a sexually violent person" or the phrase "is no longer a sexually violent person" for the inquiries under *both* § 980.09(1) and (2). *Id.*, ¶¶ 4, 5, 27, 30, 43, 52, 53.

[10] The State relies on the description of the expert's report in *this* court's opinion in *State v. Arends*, 2008 WI App 184, ¶ 5, 315 Wis. 2d 162, 762 N.W.2d 422, *aff'd in part and modified by* 325 Wis. 2d 1. The State asserts that our description shows that the report opined that Arends himself had changed since the initial commitment and therefore the supreme court's conclusion that the report was sufficient under Wis. Stat. § 980.09(1) supports the State's proposed construction. However, as we have noted above, the supreme court described the report only by its conclusion " 'to a reasonable degree of professional certainty' that Arends was 'not more likely than not to sexually reoffend.' " *Arends*, 325 Wis. 2d 1, ¶ 10. We do not understand the supreme court to base its conclusion that the report is sufficient under § 980.09(1) on reasons the court does not mention.

464

¶ 24. However, we disagree with Ermers in that we think it is reading too much into *Arends* to conclude that *Arends* decides the meaning of the "condition has changed" language in WIS. STAT. § 980.09(1). The focus of *Arends* is on the circuit court's role under § 980.09(2). *See id.*, ¶ 34 (describing this as the central dispute between the parties). It appears that the *Arends* court was not called upon to address and did not intend to address the meaning of the disputed language in § 980.09(1).[11]

## IV. *Richard*

¶ 25. After the briefs were submitted in this case, we decided *Richard*, 2011 WI App 66, which concerns a petition for discharge under the current WIS. STAT. § 980.09. The petition for discharge in *Richard* was

---

[11] The parties debate the meaning of paragraph 41 in *Arends*, with Ermers contending it supports his position:

> We also reject the notion that the burden shifts to the petitioner to prove he or she "no longer meets" the criteria for commitment. The statute focuses on whether a trier of fact could conclude that the petitioner "does not meet the criteria for commitment." The petitioner does not need to prove a change in status in order to be entitled to a discharge hearing; the petitioner need only provide evidence that he or she does not meet the requirements for commitment.

*Arends*, 325 Wis. 2d 1, ¶ 41. We understand the court here to be rejecting the State's argument that, in order to obtain a discharge hearing under WIS. STAT. § 980.09(2), the petitioner must not only present evidence from which a reasonable fact finder could conclude the petitioner no longer meets the requirements for commitment, but also must convince the court that the evidence supporting the petitioner's position is stronger than the evidence against it. We do not read this paragraph to be commenting on the meaning of the "condition has changed" language in § 980.09(1).

based on a recent research paper by the authors of the Static-99, in which they argued that this instrument should be revised to reflect the lower probability of sex offenders committing another sexually violent offense as they get older. *Id.*, ¶ 8. Significantly, however, there was no expert report evaluating the petitioner using this new research. *Id.*, ¶ 17. We concluded that a research paper by itself does not "demonstrate that a sex offender's condition has changed." *Id.*, ¶ 1. We reasoned that a research paper by itself was insufficient under § 980.09(1) because it was "unassociated with [Richard's] specific condition . . . [and] provides no insights into *Richard's* likelihood of reoffending." *Id.*, ¶ 13 (emphasis in original). We rejected the petitioner's argument that *Pocan* entitled Richard to a discharge hearing. *Id.*, ¶ 15. We pointed out that in *Pocan* there was a "new diagnosis" of Pocan based on new actuarial tables, whereas in *Richard* there was no examination of the petitioner based on the new research. *Id.*, ¶ 17.

¶ 26. Our opinion in *Richard* may suggest that, had there been an evaluation of the petitioner that applied the new research and concluded his likelihood of reoffending no longer met the statutory requirement, such an evaluation would satisfy the requirements of current WIS. STAT. § 980.09(1). However, we did not need to reach this issue on the facts before us in *Richard* and we did not address it.[12]

---

[12] In *Richard* we stated that the distinctions between the current version of WIS. STAT. § 980.09 and the version in effect when *Pocan* was decided did not affect our analysis. *See State v. Richard*, 2011 WI App 66, ¶ 15 n.3, No. 2010AP1188 (Apr. 27, 2011). However, the distinction we referred to did not include the difference between the "still a sexually violent person/no longer a sexually violent person" language in § 908.09(2)(a)-(b) (2001–02) and the "condition has changed" language of current § 908.09(1). *Id.*

## V. Interpretation of Disputed Language

¶ 27. Because we conclude that existing case law does not resolve the question of the proper construction of the "condition has changed" language in Wis. Stat. § 980.09(1), we turn to an examination of this language.

¶ 28. The State argues that the plain meaning of "condition has changed" is that the person's mental disorder has changed, not the professional knowledge or research that evaluates a person's mental disorder or dangerousness. We note at the outset that the State does not explain why a change in a person's physical condition is excluded from its proposed construction. For example, in the State's view, if a person develops a physical disability that, according to an expert, makes it no longer more likely than not the person will sexually reoffend, these circumstances could not satisfy the pleading requirements of Wis. Stat. § 980.01. We see no reasonable basis for this distinction between a mental and a physical change in the person.

██

¶ 29. However, there is a more fundamental problem with the State's proposed construction. Read in isolation, the "condition has changed" language arguably means that the change must be in the person's mental or physical condition itself and not a change in the professional knowledge or research used to evaluate the person's condition. However, we do not construe statutory language in isolation. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We consider the language in the context of related statutes and in the context of the purpose of the statute as revealed in the text, and we interpret the language reasonably, so as to avoid unreasonable results. *Id.*, ¶¶ 46, 49.

¶ 30. The purpose of Wis. Stat. ch. 980 as evident in its text is to commit a person who meets the requirements of a sexually violent person to the custody of the department "for control, care and treatment until such time as the person is no longer a sexually violent person." § 980.06. The annual re-examinations and re-ports required by § 980.07, including the availability of another examiner upon the request of the committed person, § 980.07(1), and the procedures for a discharge hearing all underscore that the purpose of ch. 980 is to confine persons only as long as they meet the statutory criteria for being sexually violent.

¶ 31. In view of this purpose, we conclude that the only reasonable construction of the "condition has changed" language in Wis. Stat. § 980.09(1) is that it encompasses all the changes that, a fact finder could determine, result in the person not meeting the criteria for commitment as a sexually violent person. Specifically, this language includes not only a change in the person himself or herself, but also a change in the professional knowledge or research used to evaluate a person's mental disorder or dangerousness, if the change is such that a fact finder could conclude the person does not meet the criteria for commitment. Expert opinions are typically relied upon by fact finders at the initial commitment hearing in deciding that a person's mental disorder and degree of dangerousness meet the statutory criteria. These opinions are based on the professional knowledge and research available at the time.[13] We see no rationale

---

[13] *See Combs*, 295 Wis. 2d 457, ¶ 25 ("The methods professionals use to evaluate whether a person is sexually violent include both methods to determine whether a person has a

for interpreting § 980.09(1) to prevent a committed person from obtaining a discharge hearing based on a change in that knowledge or research when, in the opinion of an expert, that change results in the person not meeting the criteria for commitment.

¶ 32. In rejecting the State's proposed construction, we also take into account the significant role that discharge hearing procedures have in assuring the constitutionality of WIS. STAT. ch. 980. The re-examinations and procedures for discharge hearings are "among the protections that the supreme court has considered significant in concluding that WIS. STAT. ch. 980 does not violate the equal protection clause or the right to due process." *Combs*, 295 Wis. 2d 457, ¶ 28 (citing *State v. Post*, 197 Wis. 2d 279, 307 n.14, 313–16, 325–27, 541 N.W.2d 115 (1995)); *see State v. Rachel*, 2002 WI 81, ¶ 66, 254 Wis. 2d 215, 647 N.W.2d 762 (ch. 980 "passes constitutional muster" because confinement is "linked to the dangerousness of the committed person" and there are procedures for ending confinement when the person is no longer dangerous); *State v. Thiel*, 2004 WI App 140, ¶ 23, 275 Wis. 2d 421, 685 N.W.2d 890 ("[O]ur supreme court has tied the constitutionality of WIS. STAT. ch. 980 to the availability of periodic reviews that reassess the person's dangerousness to determine if a lesser restriction of his or her liberty is warranted."); *see also Foucha v. Louisiana*, 504 U.S. 71, 77 (1992) (a person subject to a mental health commitment "may be held as long as he is both mentally ill and dangerous, but no longer").

¶ 33. The State's proposed construction would exclude changes in professional knowledge and research from the category of changes that may warrant a dis-

mental disorder within the meaning of WIS. STAT. § 980.01(2) and methods to determine the likelihood of engaging in acts of sexual violence [as a result of that disorder].").

charge hearing—and ultimately a discharge—with the result that there may be an indefinite detention of persons who do not meet the criteria for a sexually violent person based on current professional knowledge or research. Similarly, the exclusion, under the State's proposed construction, of physical changes that cause a person to not meet the statutory definition of dangerousness could cause the indefinite detention of persons who do not meet the criteria for sexually violent persons. These potential results present serious constitutional concerns and are another ground on which we reject the State's proposed construction.

¶ 34. In summary, we interpret the phrase "the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person" in WIS. STAT. § 980.09(1) as follows: the phrase includes not only a change in the person himself or herself, but also a change in the professional knowledge and research used to evaluate a person's mental disorder or dangerousness, if the change is such that a fact finder could conclude the person does not meet the criteria for a sexually violent person. Put in the context of the inquiry under § 980.09(1), the circuit court may not deny a discharge petition without a hearing if the petition alleges facts from which a fact finder could determine that, as a result of any one of those changes, the person does not meet the criteria for a sexually violent person.

¶ 35. We emphasize that the "change" referred to in WIS. STAT. § 980.09(1) does not include an expert opinion that depends only on facts or professional knowledge or research that was considered by the experts testifying at the commitment trial. *Combs*, 295 Wis. 2d 457, ¶ 1. In *Combs* we concluded that such an expert opinion was inadequate to establish probable cause that

the committed person was no longer a sexually violent person under § 980.09 (2003–04). *Id.* The court in *Arends* stated that *State v. Kruse*, 2006 WI App 179, 296 Wis. 2d 130, 722 N.W.2d 742, which relied on *Combs* for this proposition, was still applicable under the current § 980.09. *Arends*, 325 Wis. 2d 1, ¶ 39 n.21. Although the *Arends* court was at that point specifically addressing § 980.09(2), we understand the court to mean that such a report would also be inadequate to meet the pleading requirements in § 980.09(1).

¶ 36. In this case, Dr. Rypma's opinion relies on professional knowledge and research not considered at the commitment trial. In addition, unlike in *Richard*, there is an expert report using the new knowledge and research to evaluate the likelihood of Ermers, in particular, reoffending. Applying the construction of Wis. Stat. § 980.09(1) we have just adopted, we conclude Dr. Rypma's report satisfies the requirements of § 980.09(1), the first step in obtaining a discharge hearing.

¶ 37. Regarding the second step in obtaining a discharge hearing, Ermers contends in his main brief that the documents he submitted, in addition to the amended petition with Dr. Rypma's report, entitle him to a discharge hearing under Wis. Stat. § 980.09(2). The State does not dispute this assertion in its responsive brief. We therefore take this as a concession that Ermers is correct. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (citing *State ex rel. Blank v. Gramling*, 219 Wis. 196, 199, 262 N.W. 614 (1935)). Based on this implicit concession, we conclude Ermers is entitled to a discharge hearing.[14]

---

[14] We note that the "condition has changed" language appears only in Wis. Stat. § 980.09(1), which addresses the alle-

CONCLUSION

¶ 38. We conclude that Ermers' pleading and the attached report of Dr. Rypma meet the requirements of Wis. Stat. § 980.09(1). The State does not dispute that, if the requirements of § 980.09(1) are met, Ermers is entitled to a discharge hearing under § 980.09(2). Accordingly, we reverse the circuit court's denial of a discharge hearing and remand for a discharge hearing.

*By the Court.*—Order reversed and cause remanded for further proceedings.

gations in the petition, and does not appear in § 980.09(2), the second step of the process for obtaining a discharge hearing. The parties do not directly address this point. However, we do not understand either party to suggest that this language imposes a pleading requirement that is not part of the showing necessary to obtain a discharge hearing under § 980.09(2). To clarify this point, we conclude that the only reasonable construction of § 980.09(1) and (2) is that the "change" that must be alleged in the petition under § 980.09(1), as we have interpreted it, must also be shown by the documents considered under § 980.09(2) in order to obtain a discharge hearing. This is consistent with the *Arends* court's characterization of the analysis required by § 980.09(1) and (2). The *Arends* court described the inquiry under § 980.09(1) as similar to that used to determine the sufficiency of a complaint when challenged for failure to state a claim; and it described the inquiry under § 980.09(2) as similar to that used to determine the sufficiency of the evidence to withstand a motion to dismiss at the close of evidence. *Arends*, 325 Wis. 2d 1, ¶¶ 29, 42. It is not reasonable to require a pleading to allege facts that need not later be presented as evidence.